UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Richard Blanchard, | Case No.: 16-cv-1783-BAS-AGS |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 31, 50, 52, 59) AND ON THE COUNTY'S MOTION TO STRIKE SECOND AMENDED COMPLAINT (ECF No. 35)** |
| v. | |
| County of San Diego, et al., | |
| Defendants. | |

Plaintiff sued prison doctors and others for ignoring his arthritis and injured knee, and actively thwarting his attempts to see the required medical specialists. Defendants move to dismiss. The main issue is whether the facts plaintiff alleges—which must be presumed true at this stage—sufficiently establish an Eighth Amendment violation.

**I**

**BACKGROUND**

Plaintiff Richard Blanchard claims that while he was an inmate at certain San Diego County detention and reentry facilities, the County and its contract medical provider, Global Medical Staffing, Inc., had a "policy or custom of restricting, if not outright denying referrals to specialists when such care is expensive." (ECF No. 30, at 2, 23.) For example, on September 2, 2015, Blanchard saw defendant Dr. John Gill about his rheumatoid arthritis and torn meniscus, which required rheumatology and orthopedic consults, respectively. According to Blanchard, Dr. Gill acknowledged that Blanchard required

1

"more advance[d] medications" to relieve his arthritis, which could only be obtained from a rheumatology specialist. But when Blanchard asked for a referral, he alleges that Dr. Gill replied, "You will need to wait until you're released [11 months later]. The Sheriff's department will not pay for a specialist." (ECF No. 30, at 5-6.) And when Blanchard inquired if he could pay for his own orthopedic specialist to examine his injured knee, Dr. Gill purportedly responded, "The San Diego Sheriff's [Department] would not pay for transport and security[.]" (*Id*. at 6.)

This discouraging appointment prompted Blanchard to engage in fruitless attempts to hire his own specialists, which he asserts delayed him from finally obtaining state-funded specialist referrals. (*See id*. at 6-11.) On December 3, 2015—three months after his first request to Dr. Gill—prison officials finally arranged for Blanchard to see a rheumatologist, and exactly one week later he saw an orthopedic specialist. (*Id*. at 14-15.) But it appears his arthritic pain was not sufficiently alleviated until at least June 28, 2016, when the rheumatologist increased his medication dosage. (*Id*. at 21.)

A similar scenario unfolded at the same time with defendant Dr. Cynthia Kline-Purviance.[1] On October 27, 2015, Blanchard asked her for an orthopedic referral due to "repeated issues related to the torn meniscus," including "swelling, pain and difficulty walking." (ECF No. 30, at 10.) He asserts that she, too, responded that the "Sheriff's Department would not approve an orthopedic referral[.]" (*Id*.) As with Dr. Gill, Blanchard then discussed the possibility of hiring a private specialist, and Dr. Purviance allegedly advised him to "speak to [the] watch commander for arrangement[s]." (*Id*.) More than six weeks after this medical visit, Blanchard finally secured his first appointment with a state-funded orthopedic specialist. (*Id*. at 15.) And on May 18, 2016, his meniscus was surgically repaired. (*Id*. at 20.)

---

[1] The parties appear to refer to defendant Cynthia Kline-Purviance, M.D., as "Dr. Purviance." (*See* ECF No. 30, at 3; ECF No. 52, at 7.) So, the Court will generally refer to her this way as well.

During the delay before he saw these specialists, Blanchard contends that he suffered "debilitating pain," which made it so difficult to walk that he sometimes required a wheelchair. (ECF No. 30, at 11, 13, 15.) For instance, on December 7, 2015, he asserts that he "went 'Man Down' due to shaking, extreme joint pain in all extremities, extreme fatigue and nausea and was taken to medical in a wheelchair[.]" (*Id.* at 15.) By the next month, he claims that he was "distraught and hopeless over the daily pain, suffering and inability to have his medical needs addressed." (*Id.* at 17.)

Based on these asserted hardships, Blanchard ultimately sued the County of San Diego, Global Medical Staffing, Dr. Gill, Dr. Purviance, and other doctors and officials for violating his Eighth Amendment rights by denying and frustrating his access to necessary medical care. He also accuses most of these defendants of medical malpractice.

## II

## COUNTY'S MOTION TO STRIKE THE SECOND AMENDED COMPLAINT

The County moves to strike the second amended complaint for being filed without proper permission. Within certain time limits, plaintiffs may amend their complaints once as a matter of course, as Blanchard did here with his first amended complaint. *See* Fed. R. Civ. P. 15(a)(1); (ECF Nos. 1, 30). But any additional amendments require "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *see also id.*, Adv. Comm. Notes, 2009 amend. ("The 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative."). The County never gave written consent, and Blanchard failed to seek this Court's approval to file a second amended complaint. Thus, the County's motion to strike should be granted, leaving Blanchard's properly-filed first amended complaint as the operative pleading.

This ruling has no effect whatsoever on the analysis of the pending motions to dismiss, because the first and second amended complaints are nearly identical. Blanchard's second amended complaint mainly added medical care he received since his release from prison. (*Compare* ECF No. 30, at 21-22, *with* ECF No. 33, at 23-24, ¶¶173-176.) The latest

3

amendments did not address any of the alleged defects identified in the defendants' dismissal motions.

## III

## **DEFENDANTS' MOTIONS TO DISMISS**

### A.   Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also* Fed. R. Civ. P. 12(b)(6). The reviewing court must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (citation omitted). But "'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (citation omitted).

Pro se pleadings demand an especially charitable interpretation, but the court "may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

### B.   Color of State Law

As a threshold matter, several defendants—Dr. Gill, Dr. Purviance, Dr. Katherine Homann, and Global Medical Staffing, Inc.—move to dismiss on the ground that Blanchard failed to adequately allege that they acted under color of state law, as required to sustain a federal civil-rights action. (ECF No. 52, at 16-18); *see Patel v. Kent School Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) ("To succeed on a [42 U.S.C.] § 1983 claim, a plaintiff must show that . . . the conduct complained of was committed by a person acting under color of state law[.]" (citation omitted)). "[A] private physician employed by the state on a contract basis to provide medical services to inmates act[s] under color of state law when treating a prisoner's injuries." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 925 (9th Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). Blanchard

4

alleges that the County contracts with Global Medical Staffing "to provide medical staffing a[t] the San Diego County Sheriff's Dept[.]," and that these doctors are GMS employees who treated him as part of that contract. (ECF No. 30, at 2-3.)

Under the extremely forgiving standard the Court must apply at this early stage, these pleadings sufficiently allege that the three doctors and GMS were acting under color of state law. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827 (7th Cir. 2009) ("[W]hen a person accepts employment with a private entity that contracts with the state [for medical services to inmates], he understands that he is accepting the responsibility to perform his duties in conformity with the Constitution."); *Maggio v. Shelton*, No. 14-cv-01682-SI, 2015 WL 5126567, at *6-7 (D. Or. Sept. 1, 2015) (collecting cases which hold that "private physicians and medical entities may be considered state actors for purposes of Section 1983 liability when a state has delegated its obligation to provide medical care for inmates to those private entities, even in the absence of a contract"). Defendants also contend that Blanchard's allegations about their contractual relationships are simply wrong (*see* ECF No. 52, at 17-18), but that is an argument that must wait until summary judgment.

## C. Constitutionally Inadequate Medical Care

The non-municipal defendants move to dismiss based on Blanchard's failure to state an Eighth Amendment claim of constitutionally inadequate medical care. (ECF No. 50-1, at 3-5; ECF No. 52, at 11-16; ECF No. 59, at 5-6.) To state such a claim, a prisoner must sufficiently allege two elements: (1) "the existence of a serious medical need," and (2) the prison official's "deliberate indifference" to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citations omitted).

### 1. *Serious Medical Need*

A serious medical need exists if, left untreated, it "'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Colwell*, 763 F.3d at 1066 (citations omitted). Thus, serious medical needs include ailments that "significantly affect[] an individual's daily activities" or cause "chronic and substantial pain." *Id.* (citation omitted). As discussed in the Background section above, Blanchard contends that he

5

suffered from rheumatoid arthritis and a torn meniscus that worsened into "debilitating pain" as his requests for rheumatology and orthopedic referrals were denied or delayed, sometimes requiring a wheelchair. (ECF No. 30, at 11, 13, 15.) Accepting all these facts as true—as the Court must—Blanchard has adequately alleged a serious medical need.

### 2. *Deliberate Indifference*

Deliberate indifference is a formidable standard. "[I]solated occurrences of neglect," as well as "mere malpractice, or even gross negligence," may be inexcusable, but they do not amount to deliberate indifference. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Rather, deliberate indifference requires at least criminal recklessness; the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837, 839-40 (1994). The plaintiff "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations omitted). "[D]elaying access to medical care" can constitute deliberate indifference, *Estelle*, 429 U.S. at 104-05, but "the delay must have caused substantial harm." *Wood*, 900 F.2d at 1335 (citation omitted).

(a) *Dr. Gill*

Despite this high bar, Blanchard makes out a plausible deliberate-indifference case against Dr. Gill. Blanchard alleges that Dr. Gill told him that he would need to see a rheumatology specialist in order to get "more advance[d] medications" to relieve his arthritis. But when Blanchard asked for a referral, he claims that Dr. Gill responded, "You will need to wait until you're released [11 months later]. The Sheriff's department will not pay for a specialist." (ECF No. 30, at 5-6.) In fact, this information was incorrect, as evidenced by the fact that—after months of delay and before his release—Blanchard eventually saw two specialists. (*Id.* at 14-15.) Perhaps Dr. Gill was mistaken. Or perhaps

6

he never said this, and Blanchard is mistaken. Those are questions for summary judgment or trial. At this stage, the pleadings sufficiently allege that Dr. Gill knew that Blanchard required a specialist's treatment, refused to make the necessary referral, and provided affirmatively false information that delayed Blanchard from obtaining the advanced medications he required, causing substantial pain in the meantime. Alternatively, these allegations could support the conclusion that Dr. Gill was enforcing a policy or custom of discouraging specialist referrals, and that he did so based solely on financial concerns, not his medical judgment. Either way, viewed in the light most favorable to Blanchard, these facts support a finding of intentional or criminally reckless conduct. Thus, he states a claim and Dr. Gill's motion to dismiss should be denied.

(b) *Dr. Purviance*

Blanchard accuses Dr. Purviance of similar misconduct, but regarding his orthopedic referral. He claims that he asked for such a referral because of "repeated issues related to the torn meniscus," including "swelling, pain and difficulty walking." (ECF No. 30, at 10.) But he states that Dr. Purviance refused under the false premise that the "Sheriff's Department would not approve an orthopedic referral[.]" (*Id*.) The main difference between the facts alleged against Dr. Gill and Dr. Purviance is the length of delay. After Dr. Gill purportedly refused to make a rheumatology referral, it took three months before Blanchard saw a rheumatologist. (*Id*. at 5, 14.) But the delay was only six weeks between Dr. Purviance's alleged refusal to make an orthopedic referral and Blanchard's first orthopedic appointment. (*Id*. at 10, 15.) A six-week delay for an orthopedic referral may be reasonable, but the Court cannot resolve that factual dispute yet. Viewed in the light most favorable to Blanchard, these allegations support a finding that Dr. Purviance was deliberately indifferent in the same manner as Dr. Gill, and that her knowing disregard of Blanchard's serious medical condition resulted in extra weeks of debilitating pain. So, Dr. Purviance's motion to dismiss should be denied, but she too will have a later opportunity to contest these allegations.

(c) *Dr. Homann*

It is unclear why Blanchard named Dr. Katherine Homann as a defendant. He states that on October 20, 2015, she "performed a thorough examination," prescribed an anti-inflammatory for his pain, and indicated that she had completed a rheumatology referral. (ECF No. 30, at 10.) On November 10, 2015, she again "performed a detail[ed] examination and explained that there was an RH [rheumatology] appointment scheduled in about one week and the orthopedic would be about 6 weeks." (*Id*. at 11.) Blanchard does not allege that any of these statements were lies or that Dr. Homann did anything to delay his therapy; he merely contends that it took somewhat longer to see the specialists than she stated. Because Blanchard has not alleged that Dr. Homann knowingly delayed his treatment, her motion to dismiss the Eighth Amendment claim should be granted.

(d) *Dr. Serra*

Dr. John Serra is named as a defendant, but Blanchard makes absolutely no allegations of any kind against him. In fact, the name "Serra" appears only once in the first amended complaint, but that appears to be a typographical error, in which his last name was appended onto Dr. Homann's. (*See* ECF No. 30, at 3 ("Dr. Katherine Homann Serra at all relevant times was acting under color of law.").) Thus, his motion to dismiss should be granted.

(e) *Global Medical Staffing, Inc.*

Blanchard claims that Global Medical Staffing "has a policy or custom of restricting, if not outright denying referrals to specialists when such care is expensive," that Dr. Gill and Dr. Purviance were following that policy when they denied him specialist referrals, and that GMS followed that policy by allegedly delaying or canceling his appointments, failing to promptly provide medical records, and failing to ensure uninterrupted medication access. (ECF No. 30, at 23, 26, 28-32.) Blanchard's allegations of occasional missed appointments and missed medications amount to "isolated occurrences of neglect," which do not constitute deliberate indifference. *See Wood*, 900 F.2d at 1334 (citation omitted). And his claim that GMS has a "policy or custom of restricting" referrals to expensive

8

specialists is merely a "'naked assertion' devoid of 'further factual enhancement.'" *See Iqbal*, 556 U.S. at 678 (citation omitted); (ECF No. 30, at 23). Thus, GMS's motion to dismiss the Eighth Amendment claim should be granted.

(f) *Deputy Buchanan and Sergeant Weishaar*

Finally, Blanchard alleges that two prison officials—Deputy David Buchanan[2] and Sergeant Jeffery Weishaar—were deliberately indifferent to his medical needs by denying him a wheelchair on one occasion. On November 23, 2015, Blanchard was slow to respond to a doctor call "due to his debilitated state." (ECF No. 30, at 13.) According to Blanchard, as he limped forward, he asked Deputy Buchanan, "[M]ay I have a wheelchair?" Not only was the request denied, but Blanchard claims that the deputy told the other medical call inmates, "Let 'Shuffles' here lead the pack since he is the slowest[.]" (*Id.*) Three days later, Blanchard submitted a grievance about this incident, which Sergeant Weishaar purportedly rejected. (*Id.* at 14.)

Even assuming all these facts as true, they do not make out a claim of deliberate indifference. To meet that high standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Blanchard does not contend that these prison officials knew how serious his medical condition was, or that their conduct might pose an excessive risk to his health or safety. Also, the only allegation against Sergeant Weishaar is that he later denied Blanchard's grievance; there is no evidence he even knew of this incident when it happened. Sergeant Weishaar's actions—days afterwards—could not have caused Blanchard any physical harm on this occasion. The prison officials' motion to dismiss, therefore, should be granted.

---

[2] The parties spell defendant Buchanan's name variously as "Buchanan" or "Buchannan." (*See, e.g.*, ECF No. 30, at 3, 13; ECF No. 50-1, at 1.) The Court will refer to his last name consistently as "Buchanan," which is the way it is captioned and initially mentioned in the first amended complaint. (*See* ECF No. 30, at 1, 3.)

**D. Municipal Federal Civil-Rights Claim**

The County of San Diego argues that Blanchard has not alleged a plausible federal civil-rights claim against it. To state such a municipal-liability claim, a plaintiff must establish that the constitutional violation resulted from "a municipal policy or custom," or from the municipality's "deliberate indifference" to an inadequate training program. *City of Canton v. Harris*, 489 U.S. 378, 385, 392 (1989); *see also Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) (holding that local governments may be liable under § 1983 for constitutional injuries resulting from that "government's policy or custom").

In the light most favorable to Blanchard, he alleged that two doctors involved in treating inmates told him that the Sheriff's Department has a policy or custom of denying specialist visits.[3] (ECF No. 30, at 6, 10.) And he asserts that both these doctors in fact denied his referral requests—suggesting they were following that policy or custom. These claims are further buttressed by the fact that he allegedly had to endure extra weeks or months of excruciating pain before the Sheriff's Department provided those specialist appointments. While the County may ultimately prove that these allegations are unfounded, Blanchard has adequately stated a claim of municipal liability.

---

[3] One view of these allegations would be that the doctors told the truth about the County's custom of denying specialist referrals, and they consciously chose to follow that custom against their medical judgment. Another interpretation—which tends to implicate the doctors, but exonerate the County—might be that they were lying, and that they fabricated this policy or custom in order to delay Blanchard's treatment. Blanchard need not settle on a single theory, as he may pursue inconsistent arguments. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically" and the complaint is "sufficient if any one of them is sufficient."); *cf. Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) (rejecting "a policy which permits one claim to be invoked as an admission against an alternative or inconsistent claim" for motion-to-dismiss purposes); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

### E. Medical Malpractice Claim

Curiously, Dr. Serra is the only defendant who moves to dismiss Blanchard's medical malpractice claim. (*See* ECF No. 59-1, at 2, 6.) Because Dr. Serra's name does not appear anywhere in the body of the first amended complaint (except for the previously-noted typographical error), his motion to dismiss should be granted as to this claim as well. Also, since Deputy Buchanan and Sergeant Weishaar are not mentioned in this claim (*see* ECF No. 30, at 34-43), they need not move to dismiss it. But the malpractice claim should remain against the other defendants—Dr. Gill, Dr. Purviance, Dr. Homann, Global Medical Staffing, and the County of San Diego.

### F. Injunctive Relief

Blanchard seeks a wide-ranging injunction aimed at preventing further "deliberate indifference to inmates['] medical needs," which defendants oppose. Blanchard's "claims for injunctive relief are moot because [he] has been released from custody." *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015); (ECF No. 30, at 42, ¶292 (referencing release from custody)). So, his injunctive-relief claim must fail.

### G. Punitive Damages

Although some defendants move to dismiss Blanchard's punitive-damages claim (ECF No. 52, at 19; ECF No. 59-1, at 7), the Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 88 (1983). Such punitive damages are available "even when the underlying standard of liability for compensatory damages is one of recklessness." *Id.* Thus, Blanchard should be allowed to seek punitive damages against any defendant against whom he has adequately stated a deliberate-indifference claim.

### H. Opportunity to Amend

A pro se plaintiff is entitled to an "opportunity to amend the complaint to overcome [any] deficiency unless it clearly appears from the complaint that the deficiency cannot be

overcome by amendment." *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000) (citations omitted). Blanchard has already drafted three versions of this complaint (*see* ECF Nos. 1, 30, 33), and he filed the first amendment partly to "address the deficiencies outlined" in the County's initial motion to dismiss. (ECF No. 21, at 1-2.) But this is the first time the Court has notified Blanchard of any legal deficiencies in his complaint, so he should be given one last opportunity to amend it.

# IV

# CONCLUSION

This Court recommends that:

1. Defendant County of San Diego's motion to dismiss the first amended complaint (ECF No. 31) be **GRANTED** as to the injunctive-relief claim only and otherwise **DENIED**;

2. Defendant County of San Diego's motion to strike the second amended complaint (ECF No. 35) be **GRANTED**;

3. Defendant Weishaar and Buchanan's motion to dismiss the first amended complaint (ECF No. 50) be **GRANTED**;

4. The motion to dismiss the first amended complaint filed by defendants Global Medical Staffing, Dr. Gill, Dr. Purviance, and Dr. Homann (ECF No. 52) be **GRANTED** as to the injunctive-relief claim, **GRANTED** as to the Eighth Amendment claim against Dr. Homann and Global Medical Staffing only, **DENIED** as to the medical-malpractice claim, and otherwise **DENIED**;

5. Defendant Dr. Serra's motion to dismiss the first amended complaint (ECF No. 59) be **GRANTED**; and

6. If the District Judge adopts or modifies this report, Blanchard shall have 14 days from that order to file a third amended complaint to address the identified deficiencies. If he chooses not to file a third amended complaint, the case will proceed on the first amended complaint, but only as to the remaining defendants and claims.

Upon being served with a copy of this report, each party has 14 days to file any objections. *See* Fed. R. Civ. P. 72(b)(2). A party may respond to any such objection within 14 days of being served with it. *See id*.

Dated: August 8, 2017

_____
Hon. Andrew G. Schopler
United States Magistrate Judge